**IT IS ORDERED as set forth below:**

**Date: May 3, 2019**



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MICHAEL LEE MORGAN | ) | CASE NO. 16-68329– LRC |
| ANGELA ELLEN MORGAN, | ) | |
| | ) | |
| DEBTORS. | ) | |

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE SETTLEMENT**

Before the Court is the Motion to Settle and Compromise Various Controversies and to Transfer the Estate's Interest in Real Property (the "Motion"), filed by Edwin K. Palmer ("Trustee"), as Chapter 7 trustee for the bankruptcy estate (the "Estate") of Michael Lee Morgan and Angela Morgan (the "Debtors"). (Doc. 83). The Court held evidentiary hearings on the Motion on December 20, 2018, and January 16, 2019. As the Motion concerns the administration of the Estate, the Court has subject matter jurisdiction over this matter, and this matter is a core proceeding. *See* 28 U.S.C. §§ 1334, 157(a), 157(b)(2)(A).

## I. BACKGROUND

At the heart of this dispute are the interests in Debtors' residence located at 110 Addison Court, Roswell, Georgia 30097 (the "Property"). The Property was originally owned by Frankie and Herbert Marshall. (Doc. 48, at 11). In 2003, the Marshalls conveyed the Property to themselves and their daughter, Debtor Angela Ellen Morgan, as joint tenants. (*Id.* at 10). That same year, the Marshalls and Mrs. Morgan entered into an agreement with Countrywide Bank ("Countrywide") whereby Mrs. Morgan would be responsible for monthly mortgage payments between $2,200 and $3,000. (*Id.*)

Months later, Mr. Marshall received an advertisement from IndyMac Bank F.S.B. ("IndyMac"), offering to refinance the Property under better terms than those offered by Countrywide. (*Id.*) On November 25, 2003, the Marshalls executed a security deed with IndyMac (the "Marshall Security Deed"). Due to an apparent oversight by IndyMac, Mrs. Morgan was not made a party to the Marshall Security Deed. However, Mrs. Morgan was apparently aware that her parents refinanced the Property and she began making payments to IndyMac. (Doc. 48, at 12).

On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision and placed in receivership of the Federal Deposit Insurance Corporation ("FDIC"). (*See* FDIC, Failed Bank Information, Information for IndyMac, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA, https://www.fdic.gov/bank/individual/failed/indymac.html#Loan%20Customers (last visited March 29, 2019)). The FDIC designated Deutsche Bank National Trust Company ("Deutsche") as attorney-in-fact for IndyMac, and on February 5, 2010, Deutsche

2

purportedly assigned the Marshall Security Deed to itself.[1]

Mrs. Morgan stopped making mortgage payments in 2008 and on March 6, 2012, Deutsche foreclosed on the Property. At that time, the Property was held by Mrs. Marshall and Mrs. Morgan as joint tenants.[2] Because Mrs. Morgan was not a party to the Marshall Security Deed, Deutsche only foreclosed on Mrs. Marshall's interest. In 2014, after Mrs. Marshall passed, Mrs. Morgan conveyed her interest in the Property to herself and to her husband, Debtor Michael Morgan, as joint tenants.

On April 7, 2015, Deutsche initiated an action in the Superior Court of Fulton County, Georgia (the "State Court Action"). (Doc. 48, at 6). Deutsche sought to have its lien equitably subrogated to the extent that IndyMac had paid Mrs. Morgan's liability on the note to Countrywide. Deutsche also alleged that it had "advanced at least $71,395 in property taxes and hazard insurance for protection of the Property" and was therefore entitled to an equitable lien. (*Id.* at 13). Debtors responded that the assignment from IndyMac to Deutsche was invalid and, therefore, Deutsche had no interest in the Property. On September 23, 2016, the state court entered a summary judgment order finding that Deutsche was not entitled to equitable subrogation.[3] The state court also found that Debtors lacked standing to challenge the assignment from IndyMac to Deutsche. (*Id.* at 19). Because of an evidentiary error, the state court postponed addressing Deutsche's claim for an equitable lien based on taxes and insurance until trial. However, on October

---

[1] As described below, Debtors dispute the validity of this assignment.
[2] Mr. Marshall died in September 2004. (Doc. 48 at 12).
[3] Deutsche also raised a claim for an equitable lien based on the same grounds as its equitable subrogation claim. This claim was considered and rejected on the same grounds. (Doc. 48 at 18 n.38).

3

13, 2016, before the court could hold a trial, Debtors filed for relief under Chapter 7 of the Bankruptcy Code and the State Court Action was stayed.

On September 14, 2017, the Trustee initiated an adversary proceeding to sell the Property free and clear of Deutsche's interest.  (Adversary Proceeding No. 17-05239, Doc. 1 (the "Adversary Proceeding")).  Deutsche filed an answer, raising a counterclaim for an equitable lien, which alleged that Deutsche had spent $90,075 on taxes, insurance, and homeowners' association dues.  (*Id.*, Doc. 5, ¶¶ 8, 13).[4]

The Trustee and Deutsche now propose to settle their disputes in the State Court Action and the Adversary Proceeding (the "Settlement").  (Doc. 83).  Under the terms of the Settlement, Deutsche will pay the Trustee $245,000; the Trustee will convey the Estate's half interest in the Property to Deutsche; Deutsche and the Trustee will voluntarily dismiss with prejudice the State Court Action and the Adversary Proceeding;[5] and the Trustee will waive any claim the Estate has against Deutsche, Fidelity National Financial, Inc., and Monica K. Gilroy and the Gilroy Law Firm.  (Doc. 83, at 4).  Debtors oppose the Settlement and contend that the Trustee has failed to fully investigate the claims listed in Debtors' Schedules.

## II. DISCUSSION

When deciding whether to approve a settlement, the bankruptcy court must consider:

---

[4] This appears to be the basis for the claim Deutsche filed in the lead bankruptcy case.  (Claim No. 3-1).
[5] During a hearing held on January 16, 2019, the Trustee and Deutsche announced that the Settlement will be amended and will not include entering a "Final Consent Order" in the State Court Action.  To the extent that Debtors object to the amendment for lack of notice, their objection is overruled.  The change is immaterial and does not require re-noticing.

4

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (quoting *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)). "Courts consider these factors to determine 'the fairness, reasonableness and adequacy of a proposed settlement agreement.'" *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–13 (11th Cir. 2009) (quoting *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)). The Supreme Court explained that:

> [t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968); *see also In re Vazquez*, 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005) ("The court is neither to 'rubber stamp' the trustee's proposals nor to substitute its judgment for the trustee's, but rather to canvass the issues and determine whether the settlement falls below the lowest point in the range of reasonableness." (internal quotation marks and citation omitted)).

**A.   Probability of Success on the Merits**

Debtors insist that the Trustee should initiate a quiet title action challenging Deutsche's interest in the Property and pursue tort claims against Deutsche and other defendants. However, the Trustee is concerned that Debtors lack standing to challenge Deutsche's interest and that the tort claims listed in the Schedules are meritless. Furthermore, as the Trustee explained, the Settlement would protect the Estate from Deutsche's credible claim for an equitable lien against the Property.

**1.   Debtors' Potential Lack of Standing to Challenge Deutsche's Interest in the Property**

Debtors allege that Deutsche did not have authority to assign the Marshall Security Deed from IndyMac to itself under the power of attorney granted to Deutsche by the FDIC. Accordingly, Debtors claim that Deutsche has no interest in the Property. The Trustee notes the existence of case law that holds that, even if an assignment of security deed is invalid, the borrower lacks standing to pursue such a claim because the borrower was neither a party to nor injured by the assignment. *See Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614 (Ga. 2016); *Timbes v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2005-3*, 708 F. App'x 971, 975 (11th Cir. 2017); *Haynes V. McCalla Raymer, LLC,* 793 F.3d 1246, 1252-53 (11th Cir. 2015).

In a Chapter 7 case, the Trustee steps into the debtor's shoes for the purpose of collecting property for the bankruptcy estate, and as such may only pursue claims that could be brought by the debtor himself. *See* 11 U.S.C. § 541(a)(1); *Strumpf v. Albracht*, 982 F.2d 275, 277 (8th Cir. 1992); 5 COLLIER ON BANKRUPTCY ¶ 541.07 (Richard Levin &

6

Henry J. Sommer eds., 16th ed.). Therefore, if Debtors' standing to challenge the assignment is doubtful, the Trustee's decision to settle that claim is reasonable.

The Georgia Supreme Court's analysis in *Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614 (Ga. 2016) is instructive here. In *Ames*, JP Morgan Chase Bank, N.A. ("Chase") was appointed attorney-in-fact for the FDIC, the receiver for Washington Mutual Bank, F.A. ("WaMu"). *Id.* at 616. Acting as attorney-in-fact, Chase assigned any real estate interest held by WaMu to itself. *Id.* The Ameses, who had granted WaMu a security deed for their home, were informed that Chase was now their mortgagee and that their home was scheduled for foreclosure. *Id.* The Ameses responded by demanding proof of the assignment but Chase refused. *Id.* The Ameses subsequently filed suit alleging that the power of attorney granted by the FDIC had expired before Chase assigned the deed to itself, and therefore the assignment was invalid and Chase had no authority to foreclose on the Ameses' home. *Id.* at 620. The trial court dismissed the Ameses' challenge on the grounds that they lacked standing to challenge the assignment. *Id.* at 617. On appeal, the Georgia Supreme Court affirmed, adopting the general rule that borrowers lack standing to challenge an assignment of their security deed. *Id.* at 619-20.

However, *Ames* also addressed two instances in which a debtor may have standing to challenge the assignment of a security deed. First, a debtor would have standing if the assignment breached a contractual or statutory duty owed to the debtor. In *Ames*, the deed gave WaMu unilateral authority to assign the deed to a third party and the assignment was authorized under Georgia law. *Id.* at 619-20 (citing O.C.G.A. § 44-14-64(c)). The second source of standing arises when the debtor is a party or third-party beneficiary to the

7

assignment. *Id.* at 619-620 (citing O.C.G.A. § 9-2-20). Regarding the standing of third-party beneficiaries, the court explained,

> [challenging an assignment] may normally be done only by the assignor, because the debtor is not a third-party beneficiary of the assignment *as a whole* and particularly is not intended to directly benefit from the transfer of the power of sale. Status as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit. To the contrary, a third party beneficiary . . . can only enforce those promises made directly for his benefit.

*Id.* at 620 (emphasis in original) (internal quotations and citations omitted). The court found that the Ameses were not third-party beneficiaries and remarked that the Ameses were essentially trying to vindicate the rights of the FDIC, who the Ameses claimed was the rightful holder. *Id.* In that case, the Ameses' only remedy was to "alert the FDIC to that concern so that the FDIC may intercede to assert any rights it believes it has." *Id.* at 621; *see also Montgomery v. Bank of Am.*, 740 S.E.2d 434, 437-38, n.7 (Ga. Ct. App. 2013) (holding that a non-party debtor lacked standing to challenge the validity of an allegedly forged assignment); *Larose v. Bank of Am., NA*, 740 S.E.2d 882, 884 (Ga. Ct. App. 2013).

Debtors' challenge is strikingly similar to the argument rejected in *Ames*. Like the Ameses, Debtors contend that the power of attorney conferred by the FDIC to Deutsche did not give Deutsche authority to assign the Marshall Security Deed to itself. Debtors do not allege that the Marshall Security Deed contained terms that restricted IndyMac's authority to transfer the deed or that the assignment violated Georgia law. Instead, Debtors only charge that Deutsche lacked authority to carry out the assignment. Yet, Debtors were not parties to the assignment, nor were they intended to benefit from the

8

transfer of the Marshall Security Deed.[6] Proving the assignment was unauthorized would only benefit the FDIC, which would presumably become holder of the Marshall Security Deed. Thus, Debtors are essentially trying to vindicate the rights of the FDIC, a strategy that was flatly rejected in *Ames*.

Debtors maintain that *Ames* did not foreclose all avenues for a third party to challenge an assignment. Indeed, one issue left unresolved by *Ames* is "whether OCGA § 44–14–162(b) could ever provide a debtor with standing to challenge a foreclosure based on an unrecorded or facially invalid assignment." *Id.* O.C.G.A. § 44-14-162(b) provides that "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located."

While the Georgia Supreme Court and Court of Appeals have not addressed this issue, the Eleventh Circuit has repeatedly rejected the argument that O.C.G.A. § 44-14-162(b) could provide a debtor standing to challenge the assignment of her security deed. *See, e.g., Timbes v. Deutche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2005-3*, 708 F. App'x 971, 975 (11th Cir. 2017); *Haynes V. McCalla Raymer, LLC,* 793 F.3d 1246, 1252-53 (11th Cir. 2015). In *Haynes*, the Eleventh Circuit found that O.C.G.A. § 44-14-162(b) did not give debtors standing to challenge a facially defective assignment. *Haynes*,

---

[6] Debtors cite *Bank of Cave Spring v. Gold Kist, Inc.*, 327 S.E.2d 800 (Ga. Ct. App. 1985) to support their claim that a nonparty may challenge an assignment. *Bank of Cave Springs* involved a dispute between two creditors about the priority of their competing claims to the debtor's assets. *Id.* at 679. The court never addressed a potential standing issue and therefore *Bank of Cave Springs* does not support Debtors' position. *See Palmer v. State*, 651 S.E.2d 86, 88 (Ga. 2007) ("[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

9

793 F.3d at 1252-53.  The Eleventh Circuit based its decision on "the 'limited' nature of the protection that § 44–14–162 affords[.]"  *Id.* ("Georgia law is clear that borrowers do not have standing to attack a forged assignment of their security deed.").  That holding was echoed in *Timbes*, where the plaintiff insisted that *Haynes*' interpretation of O.C.G.A. § 44-14-162 was no longer good law because of the Georgia Supreme Court's subsequent ruling in *Ames*.  *Timbes*, 708 F. App'x at 975.  The Eleventh Circuit disagreed, holding that "nothing in *Ames* appears to cast doubt on our statement in *Haynes*."  *Id.*

Though Georgia courts are not bound by federal trial and intermediate appellate courts, those decisions can be persuasive.  *Macon–Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 458 S.E.2d 95, 96 (Ga. 1995).  As such, it was reasonable for the Trustee to take *Haynes* and *Timbes* into account when he decided against pursuing Debtors' claims.

Even ignoring *Haynes* and *Timbes*, Debtors fail to allege that the assignment was "unrecorded or *facially* invalid," which is the kind of defect that *Ames* left open as a possible source of standing.  *See Ames*, 783 S.E.2d at 622 n.7 (emphasis added).  Instead, Debtors only allege that Deutsche lacked authority to assign the Marshall Security Deed to itself.  Proving the assignment was unauthorized would require referring to the power of attorney granted by the FDIC and would not appear on the face of the Marshall Security Deed.  Therefore, Debtors allegation is that the assignment contains a latent defect, not that it was facially invalid.  *Cf. Haynes*, 793 F.3d at 1252 (describing forged signatures as a latent defect within an assignment).  Because Debtors do not allege that the assignment

10

was facially defective, their challenge does not appear to fit within the limited possibility that *Ames* left open.

In addition to challenges brought under O.C.G.A. § 44-14-162, *Ames* also clarified that "we do not address the situation in which an alleged assignee comes to court not as a defendant in a wrongful foreclosure or breach of contract case, but rather as a plaintiff seeking to enforce some aspect of the deed against the debtor, where the plaintiff may need to establish its standing to sue on the contract." *Ames*, 783 S.E.2d at 621 n.6. The debtor's ability to raise the validity of an assignment as a defense was examined in *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289 (N.D. Ga. 2014). There, the court found that the defendant debtor in a declaratory action could challenge an assignment to which he was not a party. *Id.* at 1305-06. The court explained "[i]t is LSREF who has the burden of proving its case, and as one seeking to recover on the [Assignment of Leases and Rents], LSREF has the burden of establishing that it has the legal authority to do so." *Id.*; *see also Ames*, 783 S.E.2d at 621 n.6 (citing *Alexander SRP Apts.*, 17 F. Supp. at 1306).

This distinction is unhelpful to Debtors. As previously mentioned, Deutsche's only remaining claim in the State Court Action is for an equitable lien. The potential invalidity of the assignment may give the Trustee a defense to that claim but raising that defense does not open the door to bringing an affirmative counterclaim to contest Deutsche's interest in the Property. *See LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 15 F. Supp. 3d 1351, 1353-54 (N.D. Ga. 2013) (finding that a debtor lacked standing to pursue a counterclaim challenging the assignment of a security deed). Thus, even if the Trustee

11

were able to raise a successful defense to Deutsche's equitable lien, Deutsche would still own half of the Property under the Marshall Security Deed, and the Trustee has exercised his reasonable business judgment in deciding that the risk of proceeding with litigation and rejecting Deutsche's offer to purchase the Estate's interest in the Property is too great.[7]

### 2. Debtors' Tort Claims Lack Evidentiary or Factual Support

With respect to the Estate's tort claims, the Trustee testified that he investigated those claims and found them to be meritless. The tort claims mostly involve the perceived wrongdoing of Deutsche during the foreclosure process and subsequent litigation. Debtors have had over two years to identify the facts behind these claims. Instead, Debtors have continued to make conclusory allegations and then claim they "do not have the expertise for evaluating any such claims." (Doc. 94, at 18). Debtors' assertion that "the total amount of damages that might be recovered might be $10,000,000 is not ridiculous," has no support in the record. (Doc. 94, at 19). Therefore, the Trustee's decision to waive Debtors' tort claims in favor of the Settlement was a reasonable choice made in the best interest of the Estate.

---

[7] Debtors also claim to have standing under Georgia's quiet title and quia timet statutes O.C.G.A. §§ 23-3-40 and 23-3-60. O.C.G.A. § 23-3-40 is an equitable statute that allows the court to cancel a deed that was obtained by fraud. However, "a plaintiff may not use equity to obtain the cancellation of a security deed or promissory note if the plaintiff has not paid the note or tendered payment of the note," *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 583 S.E.2d 844, 846 (Ga. 2003) (refusing to cancel a deed where the plaintiff admitted that she had not paid off the note secured by the security deed), and Debtors do not allege that they have paid off the note secured by the Marshall Security Deed. As to Debtors' quiet title action, nothing in O.C.G.A. § 23-3-60 suggests that a quiet title action would allow a debtor to challenge the assignment of a security deed. Following Debtors' logic, borrowers who are unable to bring a declaratory action to challenge the assignment of a security deed could simply refashion their claim as a quiet title action. Such a holding would be inconsistent with and essentially nullify the holding of *Ames*.

### 3. Deutsche is Waiving a Colorable Claim for an Equitable Lien

During the hearing, the Trustee also voiced concern that challenging Deutsche's interest in the Property might prompt Deutsche to retaliate by moving forward with its action for an equitable lien on the Property. That concern appears well-founded, as Deutsche raised that claim in the adversary proceeding. (AP No. 17-05239, Doc. 5, ¶ 8).

Deutsche's claim for an equitable lien finds support in Georgia case law. *See Robinson v. Sulter*, 11 S.E. 887 (Ga. 1890) (holding that, when a mortgagor fails to take care of her property and the mortgagee is forced to pay for its upkeep, the mortgagee is entitled to a lien on the property); *Reliance Equities, LLC v. Specialty Equity Partners, LLC*, 700 S.E.2d 361, 362 (Ga. 2010) (when a tenant in common pays more than her fair share of the property's maintenance, she is entitled to an equitable lien). In this case, Deutsche has filed a secured claim for $90,075, for paying Debtors' share of taxes, insurance, and homeowners association dues on the Property. (AP No. 17-05239, Doc. 5, ¶¶ 8, 13). Because Deutsche paid these expenses when it was a mortgagee to the Marshalls and tenant in common to Debtors, Deutsche has a colorable claim for an equitable lien. Although the Estate may have a defense to Deutsche's equitable lien, Deutsche has alleged a plausible claim that threatens the Estate, and the weight the Trustee afforded that claim in deciding whether to accept the terms of the Settlement is reasonable.

**B.  The Litigation Would be Complex and Costly and Would Delay the Return to Creditors[8]**

For the reasons outlined above, litigating the question of Deutsche's interest in the Property, any tort claims, and Deutsche's entitlement to an equitable lien would be complex and would involve events that occurred many years ago.  At the hearing, the Trustee testified that he considered the fact that the costs of pursuing Debtors' claims could outweigh any potential recovery.   That assessment is supported by evidence in the record.

During the hearing, David Scott Murphy, the Trustee's appraisal expert, testified that the Property was worth about $305,000 on November 27, 2018.  Under the Settlement, Deutsche will pay the Estate $245,000 in exchange for the Estate's interest in the Property and a release of all claims.  Therefore, the most the Trustee could likely recover by challenging Deutsche's interest in the Property is an additional $60,000. Regardless of the outcome, the costs of litigating these claims and the harm done to creditors by further delay could exceed this benefit.  The creditors of the Estate have already waited two and a half years for payment.  It is reasonable and fair for the Trustee to accept the Settlement, which offers certainty and immediate funds for distribution to creditors, over continuing the litigation with a risk of no return at great expense.

---

[8]   The Trustee did not present evidence regarding the second *Justice Oaks* factor; the difficulties that may be encountered during collection.  *Justice Oaks*, 898 F.2d at 1549.  Accordingly, the Court assumes that collecting the judgment would not be difficult, and therefore, this factor is neutral.

**C.    The Paramount Interest of the Estate's Creditors**

Debtors are understandably frustrated that the Trustee has entered into a settlement to sell Debtors' interest in their home. However, in a Chapter 7 case, the trustee is a fiduciary of the estate's creditors and it is his duty to maximize distribution to the creditors in an expeditious manner. *In re Moon*, 258 B.R. 828, 832 (Bankr. N.D. Fla. 2001); *see also* 11 U.S.C. § 704(a)(1) ("The trustee shall—collect and reduce to money the property of the estate for which such trustee serves . . . ."); *Gower v. Farmers Home Admin. (In re Davis)*, 899 F.2d 1136, 1143 n.15 (11th Cir. 1990) ("The bankruptcy trustee does not represent the interests of the debtor alone; rather, he owes a complex set of obligations and fiduciary duties to the court, the debtor, . . . and, most importantly, the creditors.").

According to their schedules, Debtors are unemployed and only receive $1,200 per month through social security. (Doc. 16, at 41). Given their financial situation, the Trustee reasonably concluded that selling the Property was the only feasible way Debtors could satisfy the more than $100,000 worth of unsecured claims filed against the Estate. Even if Debtors' arguments had merit and they could prove that they owned 100% of the Property, Debtors have no apparent ability to satisfy the claims of their creditors, other than through a sale of the Property.

### III.    CONCLUSION

Accordingly, for the reasons stated above, the Court concludes that the Settlement is fair and reasonable under the circumstances, and

**IT IS HEREBY ORDERED** that the Trustee's Motion to Settle and Compromise Various Controversies and to Transfer the Estate's Interest in Real Property (Doc. 83) is **GRANTED**.

**[END OF DOCUMENT]**

**<u>DISTRIBUTION LIST</u>**:

Michael Lee Morgan
Angela Ellen Morgan
110 Addison Court
Roswell, GA 30075

Edwin K. Palmer
P.O. Box 1284
Decatur, GA 30031

William Russell Patterson, Jr.
Ragsdale Beals Seigler Patterson & Gray
2400 International Tower
229 Peachtree Street NE
Atlanta, GA 30303-1629
(404) 588-0500

Monica K. Gilroy
The Gilroy Firm
Suite 140
3780 Mansell Road
Alpharetta, GA 30022